*1068 OPINION OF THE COURT
Anthony A. Scarpino, J.
On May 6, 1986 this case came before the court for a suppression hearing on the issue of whether the results of a breathalyzer test administered to the defendant by the Westchester County Police should be suppressed on the grounds that the defendant’s procedural rights to due process were violated by the police conduct, creating his inability to obtain an independent breathalyzer or chemical test, pursuant to Vehicle and Traffic Law § 1194 (8).
At the commencement of the suppression hearing, both the Assistant District Attorney, Mr. Michael Dwyer, and defense counsel, Mr. Steven M. Schwartz, stipulated to the major facts that occurred on the morning in question, those stipulated facts being contained in defendant’s affidavit in support of the motion to suppress, dated January 27, 1986.
Both counsel indicated on the record that they did not wish to add, delete or correct any items in the affidavit and that they realized the court’s responsibility in making findings of fact. Both counsel indicated that they believed that the issue to be determined was one of law and asked the court to make that determination upon the stipulated facts.
FINDINGS OF FACT
From the sworn affidavit of the defendant, Stephen R. Reynolds, dated January 27, 1986, the court makes the following findings of fact.
On December 7, 1985 at 2:20 a.m., the defendant was stopped at a D.W.I. checkpoint on the Cross County Parkway. Upon being stopped, he was asked by the police officers if he had been drinking and then was asked to get out of the car. Defendant was also asked if he would take a portable breath test, commonly known as a breathalyzer.
The defendant took the breathalyzer test after he was informed by the police officers that if he refused to take the test, he could lose his license.
After taking the breathalyzer test, the police informed the defendant that he failed the test by being over the legal intoxication limit. At this point, the police drove the defendant’s car to the side of the road and placed the defendant in the police car. They questioned him and he advised the police officers that he had consumed two beers on an empty stomach. *1069 The police then took the defendant to a trailer and asked him to take another test.
The defendant agreed to take the test which registered .10 on the printout. This test, the second test, was taken at 2:45 A.M.
The police officers provided the defendant with a form to sign and Officer Dickinson advised the defendant that he had a right to an additional test, and that he could go to a hospital and get a nurse to administer the test.
Upon being released from the custody of the police officers, defendant took a cab home to get the assistance of his father and both he and his father then drove to St. John’s Riverside Hospital to take their own test. They arrived at the hospital at 3:45 a.m. and were informed by a nurse at the hospital that a police officer was normally present and that a test could not be taken because of this requirement. The defendant and his father drove a short distance back home and called the police and spoke to Lieutenant Rokick at approximately 4:00 a.m. The defendant informed Lieutenant Rokick of the problem he was having at the hospital, as well as his desire to have an additional test administered. Lieutenant Rokick advised the defendant he would look into the matter and call him back.
At 4:10 a.m., the defendant called Lieutenant Rokick again and the lieutenant told him that one of the original officers would call him back. At 4:20 a.m., Lieutenant Rokick called back and advised the defendant to go to the hospital for the test.
At 4:25 a.m., the defendant and his father arrived at the hospital and were advised by the hospital personnel that they had been contacted by Lieutenant Rokick. The hospital personnel indicated that there was a policy consideration and that if no officer was present, no test would be administered.
Mr. Reynolds’ father requested the hospital personnel to register the defendant while he attempted to talk to Lieutenant Rokick. The defendant was assigned an admission number in the interim.
A nurse at the hospital then called another person to get permission to give the test. The unidentified person called back at 4:40 a.m. and had not made a decision as to whether the test could be administered. At 4:40 a.m., when the nurse got off the phone with this unidentified person, it was too late for the defendant to take an additional test.
*1070 CONCLUSIONS OF LAW
The novel issue presented to the court is whether the conduct of the Westchester County Police, as presented by the facts in this case, prevented the defendant from obtaining an additional test as permitted by the Vehicle and Traffic Law. If so, the original breathalyzer test could be suppressed. (Matter of Shields v Hults, 26 AD2d 971.)
The court believes that the actions of the police, under the facts presented to the court, did not prevent the defendant from having an independent test. The police released the defendant on his own recognizance and it was his responsibility to get the independent test. The statement by the police indicating he could go to a hospital to have the test taken was not a guarantee by the police as to a hospital’s policy. If the police sent him to this specific hospital, aware of their policy and, accordingly, aware that the defendant would not be able to get an independent test done without the presence of a police officer, the court’s decision might be different. Here, the police spoke in general terms to the defendant of his going to a hospital for the test and the defendant selected St. John’s Riverside Hospital on his own.
Upon arriving at the hospital and finding out that hospital policy prevented the administering of this test without the presence of a police officer, the defendant called the police for their assistance. The police assisted as best they could, but it was not their fault that this hospital’s policy and red tape delayed his immediate admission for the test. Under the circumstances that a defendant is not in custody, this court will not interpret the statute in a manner that it becomes the police department’s responsibility to insure defendant’s ability for an independent test.
Under the theory put forward by the defendant, if a released individual runs into difficulty in getting an independent test performed by a hospital, a telephone call to the police advising them of the problem will automatically suppress the original breathalyzer test if the police cannot convince the hospital to perform the independent test.
Faced with that result, law enforcement officials might then advise the defendant that they cannot assist him, creating a "Catch 22” of sorts, because their refusal to assist would probably be grounds for a suppression motion. An absolute no win scenario for law enforcement would develop which obviously never was the intention of the statute.
*1071 This court would prefer to have law enforcement people attempt to assist citizens whenever requested in this unique situation.
Accordingly, the motion to suppress the breathalyzer test is denied and a trial date will be determined May 21, 1986 when both counsel next appear.